STEPHEN PAIT ET AL. *v.* WILLIAM H. McCUTCHEN.

1. REPLEVY BOND.—Upon seizure of a slave in 1857, found in the posses-
sion of C., under sequestration in a suit against B., a bond was executed
which recited on its face that it was given by C., as principal, and B.
and another, as surety, conditioned that C. "should have her (the
slave) forthcoming to abide the decision of the court, or will pay the
value thereof in case the suit be decided against him;" C. was not
a party to the suit, but the bond was signed first by B., the defend-
ant: *Held*, that the bond, though irregular, must be treated as a
replevy bond executed by the defendant, and a judgment rendered
thereon is not affected by said irregularity.

2. REPLEVY BOND, LIABILITY ON.—When one who believed his pos-
session to be rightful executed a replevy bond for the delivery of a
slave in 1857, and was afterwards, when final judgment was ren-
dered, prevented from delivery of the property by the laws of the
United States and Texas, by reason of its having ceased to be prop-
erty, he was relieved thereby from all liability on his bond.

APPEAL from Washington. Tried below before the Hon.
I. B. McFarland.

On the 26th of March, 1857, the appellant, Pait, insti-
tuted suit in the District Court of Burleson county against
one S. M. J. Benson for the recovery of certain negro
slaves. On the 31st of March, 1857, a writ of sequestration
issued, and was executed by the proper officer, taking into
possession Mary, one of the slaves sued for, who had been
hired by the defendant, Benson, to McCutchen, the appel-
lee. On the 8th of April, 1857, a bond was executed by
McCutchen, as principal, and Benson and A. Binkley, as
sureties, reciting, as a condition of the obligation, that
"whereas a certain negro woman named Mary, of copper
complexion, aged about eighteen years, has been by the
sheriff of said county seized and taken into possession by
virtue of a writ of sequestration issued by the clerk of the
District Court of Burleson county, in said State, at the suit
of Stephen Pait against Seaborn M. J. Benson, which said
negro slave was found in the hands and possession of said

William McCutchen, and he being desirous to retain the possession of said negro slave: now, therefore, if the said McCutchen shall not send said negro slave out of the county or out of the limits of said State of Texas, and shall have her forthcoming to abide the decision of the court, or will pay the value thereof in case the suit shall be decided against him, then this obligation shall be null and void, otherwise to remain in full force and effect." This bond was signed by the defendant, Benson, W. H. McCutchen, and A. Binkley, Benson signing first.

Afterwards, at the Spring Term, A. D. 1860, of the District Court of Burleson county, the plaintiff, Pait, recovered judgment against the defendant, Benson, for the negroes sued for and for their hire; and it was further considered by the court that "if the negro Mary cannot be had, then that the plaintiff recover of the defendant and William H. McCutchen and A. Binkley, sureties on his replevy bond, one thousand four hundred dollars, her value as assessed by the jury."

Benson appealed the case to the Supreme Court, and the appellee, who was plaintiff in the District Court, having remitted from the judgment of the court below the sum of five hundred dollars from the value of the slave Maria, *one hundred dollars for the value of Mary*, two hundred dollars for the value of Sophia, and fifty dollars for the value of the infant child, as found by the jury, this court, on the 17th day of March, 1870, made an order reversing and reforming the judgment of the court below, based upon the remittitur, and afterwards, on the 30th day of April, 1870, so changed its judgment as to read as follows: "It being the opinion of the court that there was no error in the judgment of the court below, after deducting the amounts remitted, it is ordered that the judgment of the court below be in all things affirmed."

Execution having issued against Benson, McCutchen, and Binkley, for the value of the negro, Mary, after deduct-

ing the sum remitted, McCutchen sued out a writ of injunction on the 6th of May, 1871.

McCutchen, as reasons for the equitable relief sought, alleged: 1. That he did not execute a replevy bond. 2. That he was not a party to the suit. 3. That he had no notice, and the judgment was void as to him. 4. That the result of the war emancipating slaves made impossible a compliance with the bond in returning the negro, Mary, as property to appellant.

A demurrer to the petition for injunction was overruled and, after hearing, the injunction made perpetual, which action of the court was assigned for error.

The fact that three opinions of the court were delivered in this case, (two by the former court and one by the present,) and the ability and zeal shown by the eminent counsel engaged, makes a more full report of the proceedings than usual proper.

*Sayles & Bassett,* for appellant. The original brief of appellant's counsel has not been received; their views of the questions involved will, however, be found in the notice of their argument on a second rehearing.

*Giddings & Morris, Hancock & West,* contended: 1. That the bond on which the judgment was rendered was not a statutory bond, and the judgment rendered thereon was a nullity; that it was made by McCutchen, as principal, who was a stranger to the suit, and who had no right under the statute to replevy, citing Paschal's Dig., 5100; Harris *v.* Shackelford & Co., 6 Tex., 135; Hanks *v.* Horton, 5 Tex., 105; Doss *v.* Griswold, 1 Tex., 100; Jones *v.* Hays, 27 Tex., 1; State *v.* Purcell, 16 Tex., 307.

2. They contended that before the time for the performance of the bond (the final decision in 1870) the property, as such, perished by the law of emancipation, by which the bond and judgment on it was discharged and the parties no longer bound.

" That where a duty is imposed by law, or the party is bound to the performance of some act, legal at the time imposed or undertaken, if before the time of performance, a law of the Government supervenes making its performance unlawful the obligation is at an end." (Atkinson *v.* Ritchie, 10 East., 530; Benjamin on Sales, 425; Baylies *v.* Fettyplace, 7 Mass., 325; Story's Equity Jur., p. 760, note, sec. 1307; Kinnie's Compend., 150; Brewster *v.* Kitchell, 1 Salk., 198; Davis *v.* Cary, 15 Q. B., 418; Doe *v.* Rugely, 6 Q. B., 107; Brown *v.* Mayor of London, 9 C. B. N., S. 726; 3 Com. Dig., 96; Com. D., 1; Tippett *v.* Mize, 30 Tex., 361.)

So it has been held that if property in the hands of the party replevying should die the party is discharged. (Drake on Attach., 314; Sayles' Practice, 324; Porter *v.* Miller, 7 Tex., 468.)

According to the authorities the perishing of the property, whether by death or the law of emancipation, discharged the liability and excused the performance, and with it fell the other alternative to pay her value, which rests on the legal proposition, " That a party bound to do one or the other of two things has the election till the time of performance which he will do." (Story on Cont., 969; 2 Pars. on Cont., 163; Blakely *v.* Duncan, 4 Tex., 184; Cochrane *v.* Winburn, 13 Tex., 150; Porter *v.* Miller, 7 Tex., 468.)

And the performance of either alternative discharges both. (2 Story's Eq. Jur., § 1307; 1 Fonbl. Eq., 175, note; Horton *v.* Reynolds, 8 Tex., 294.)

" If the condition be to do one thing or another at the election of the obligor, and he is discharged by act of God from one, he is discharged from both." (Eaton's case, No. 357; 1 Kinnie's Compend., 150; Questions and Answers on Law.)

" When one alternative becomes impossible by act of God he is discharged from the other." (Wood *v.* Bate,

Sir William Jones' Rep., 171; Laughter's case, 3 Rep., 21.)

If a party recovers judgment for specific property or its value, and in a reasonable time, under all the circumstances, tenders a return of the property, the party will be enjoined from enforcing the alternate value for the money. (McClellan v. Marshall, 19 Iowa, 561; Whitfield v. Whitfield, 44 Miss., 254.)

In Blakely v. Duncan, 4 Tex., 184, the court say: " That the defendant cannot be cut off by the form of the judgment from discharging his liability, by a delivery of the property.

The character of the obligation is not changed by the judgment. In case of sureties, for instance, the same causes that will operate as a discharge of the surety *before* judgment will discharge *after* judgment. (Parker v. Nations, 33 Tex., 210; Pilgrim v. Dykes, 24 Tex., 384; Theobald on Surety, 126; 2 Am. Lead. Cases, 275; Will. Eq. Plead., 113.)

Now, McCutchen could not, before the case was decided in safety to himself, deliver the negro to either party, because he could not tell to whom the negro belonged till decided by the court. The judgment in the District Court was not the final judgment, for the appeal suspends the judgment. (Shapard v. Bailleul, 3 Tex., 261; Slaughterhouse Cases, 10 Wallace, 273.)

But before the final decision of the cause the emancipation law supervened, destroyed all property in the negro as effectually as if she had died. (Benj. on Sales, 425; Atkinson v. Ritchie, 10 East., 530; Baylies v. Fettyplace, 7 Mass., 325.)

The fourth legal proposition involved in this case is, " That the possession under the bond is a judicial deposit, in the custody of the law, and his liability is measured by that of the sheriff had the negro never been replevied and had remained in his hands during the pendency of the suit."

The Supreme Court have said a sequestration is a judicial deposit. It is a conservatory act which does not affect the title; but the possession under it, as to the parties to that suit, is a legal possession, and remains during the pendency of the levy in the custody of the law. (Fowler & Clepper v. Stonum, 6 Tex., 72; Linard v. Crossland, 10 Tex., 462; Blake v. Shaw, 7 Mass., 505; Drake on Attach., 285; Sayles' Prac., 366.)

According to these decisions the party replevying stands in the shoes of the sheriff, and only liable as he would have been had neither party replevied.

The depositary or officer in taking care of property is only bound to exercise ordinary diligence, and when there is no negligence on his part he is not liable for loss by theft, robbery, fire, death, or other accident. (Sayles' Treat., 798; Sayles' Prac., 41; Browning v. Hanford, 5 Hill, 588; Jenner v. Joliffe, 9 Johns., 381.)

And to this the same rule of law before laid down applies, viz: "That a supervening law making the performance illegal will release the party from his obligation." (Benj. on Sales, 425; Atkinson v. Ritchie, 10 East., 530, and authorities before cited; Tippett v. Mize, 30 Tex., 361.)

Suppose the defendant had failed to replevy and the plaintiff had exercised his right and replevied and the suit had eventually been decided in favor of the defendant, will it be contended for a moment that the plaintiff would be compelled to pay her value because the negro was emancipated and the negro still living in the jurisdiction of the court?

Suppose, again, that neither party had replevied, will it be contended that the sheriff, who must retain possession, shall be held responsible for her value because of the loss of the property by emancipation? He and those representing him would certainly be responsible only for loss by their neglect.

WALKER, J.—The opinion in 1239, McCrimmin v. Cooper, applies in the main to this case; but the question of jurisdiction in the District and Supreme Courts of McCutchen, the appellee, as well as the law which fixes the loss of the slave, Mary, are matters which must be noticed in this opinion. That McCutchen was an intermeddler in the original suit between Pait and Benson is a matter easily seen and understood. He had no business to give the delivery bond. It should have been given by Benson, the defendant in the suit, if he wanted the slave to remain in the custody of McCutchen; but it appears that McCutchen, having the slave in his possession, gave the bond with Benson and Binkley as securities. The condition of the bond was that he should deliver the slave, if called to do so by the event of the suit, or pay her assessed value.

By the verdict and judgment in the District Court the slave was found to be the property of Pait, and when this judgment was rendered, although appealed from, McCutchen became responsible for the slave, or her value, to Pait, and the subsequent affirmance by the Supreme Court of the judgment of the District Court refers back to the date of that judgment.

McCutchen's possession and detention of the slave was wrongful from the beginning, and especially so after the judgment in the District Court. Although he could not give the statutory bond, he was permitted to give a bond which had the effect for years of detaining the slave from her legal owner, and until such time as by a *vis major* she ceased to be property, and was lost to the owner. To allow McCutchen to set up the invalidity of this bond, and after years of vexatious delay and intermeddling with the rights of the appellant, would be little short of an outrage upon justice. Had he held the slave as administrator, guardian, trustee, or mortgagee, or in any legal capacity, when she became free, the loss would have fallen upon the owner; but he held her in none of these rights, simply as an inter-

meddler between Pait and Benson, delaying and prejudicing the rights of the former, and he now goes into a court of equity without excuse, setting up legal technicalities to defeat the obligation he incurred.

Had the judgment of the District Court been ever so erroneous in any view except that of jurisdiction, no court should have for one moment entertained the petition in this case, for it is utterly devoid of equity; but we unequivocally hold, on the authority of Jones *v.* Hays, 27 Tex., 1, that McCutchen had brought himself within the jurisdiction of the District Court; his bond was filed in the case almost *in limine;* it had its influence in directing subsequent proceedings, and though he did not come into the case in a strictly technical manner, he took the slave, the property of Pait, out of the custody of the law, and in so doing placed himself within the reach and jurisdiction of the court, and, in our judgment, the courts have done rightly in holding him to his responsibility, and a court of equity very far surpasses the limits of its jurisdiction and powers in attempting to set aside and enjoin a judgment so properly rendered.

The judgment of the District Court is therefore reversed and the cause dismissed.

### ON REHEARING.

*Sayles & Bassett,* for appellant.

*Hancock & West, Shepard, Searcy & Shepard,* for appellee.

There are but two modes in which judgments can be legally obtained in our courts. 1st. By suit and service. 2d. By special provision of a statute authorizing summary proceedings upon statutory bonds and the like.

I. Judgments of courts may be irregular and erroneous, or they may be null and void.

1. Irregular and erroneous judgments are such as are rendered against law in cases where the court has jurisdic-

tion, and it is admitted that these judgments cannot be collaterally impeached.

2. A null and void judgment is one where the court has not acquired jurisdiction, though the judgment itself may be correct, considered as an abstract question of law.

Such a judgment is utterly void. (See Lovejoy v. Albee, 33 Me., 416; Kenney et ux. v. Greer, 13 Ill., 443; 4 C. & H.'s Notes Phillips's Ev., Part 2, p. 12; Bouv. Law Dict., tit. Jurisdiction.)

No party is bound by a judgment or decree to which he has not become a party in some of the modes known to the law. (McCoy v. Crawford, 9 Tex., 356.)

A judgment against a defendant named in a writ, but not made a party either by service or attachment, is utterly void. (Armstrong v. Harshaw, 1 Dev., 187.)

3. If the District Court had no jurisdiction of this cause then the appellate court acquired none, and its judgment, in so far as it affected a person not a party to its proceedings, is void also. (Osgood v. Thurston, 23 Pick., 110; Williams v. Blunt, 2 Mass., 207; Paine v. Portage County, Wright's Ohio, 417.)

4. The judgment of our Supreme Court can be attacked as a nullity as well as any other. (Horan v. Wahrenberger, 9 Tex., 319; Wilson v. Sparks, 9 Tex., 621; Chambers v. Hodges, 23 Tex., 110.)

II. It is apparent that the District Court had no jurisdiction of McCutchen by virtue of suit and service; the judgment against him was a summary one upon what purported to be a statutory bond. McCutchen appears in the body of the bond as principal, and there will the court look to determine his status.

1. To authorize a summary judgment upon a statutory bond the bond must conform to the statute. (Janes v. Reynolds, 2 Tex., 256; Quinn v. Adair, 4 Ala., 317; Smith v. Erwin, 5 Yerg., 296; Allerton v. McGee, 7 Id., 106.)

2. Where a statute requires a bond to be in a certain

form that form must be followed or the bond will be void. (Commis. Poor, &c. v. Gaines et al., 1 S. C., 459.)

Our position is, that the judgment was void and a nullity as to McCutchen, because the bond was not informal or defective merely, but as a statutory bond utterly null and void, whatever might have been or may be its force at common law.

III.—1. The only protection against proceedings under a void judgment is in a court of equity. (Corwithe v. Griffing, 21 Barb., 15.)

2. The proper mode of defense to such proceedings in Texas is by injunction. (Wheeler v. Wooten, 27 Tex., 258; Trammell v. Watson, 25 Tex. Supp., 210.)

IV. The bond of McCutchen was not a statutory bond in any sense of the word, and no summary judgment could be rendered upon it.

The judgment rendered then was not irregular or erroneous, as in the case of McCrimmin v. Cooper, (present term,) but it was absolutely and utterly null and void.

The distinction between McCrimmin v. Cooper and the case at bar is this: In the former a court having complete jurisdiction rendered a judgment not in accordance with the principles of law, and it would and could have been reversed upon appeal or writ of error; in this case the court rendered a judgment that may have been sound in law upon proper pleadings, but had no jurisdiction. ·Upon the authorities cited supra such a judgment is utterly void, and of course can be treated as such in any proceeding.

We respectfully ask that the case be affirmed.

McADOO, J.—A rehearing in this case having been granted, we have examined the points raised by counsel in their briefs filed since the former opinion and judgment were rendered by this court.

We are satisfied that the former opinion of this court in

this case was founded in error, and it is the purpose of this opinion to correct that error.

Upon a close examination of the bond executed by McCutchen, as principal, and Benson and Binckley, as sureties, it was in no sense a replevin bond, but was a common-law bond fully authorized under article 5101, Paschal's Digest.

The negro in controversy was in the possession of Mc-Cutchen by him from Benson at the time of the levy of the writ of sequestration by the sheriff. Instead of taking a replevin bond from Benson, the defendant in the action, the sheriff, doubtless with the consent of Benson, (for he became surety for McCutchen,) and with the tacit consent of the plaintiff, Tait, (for he did not replevin the property within thirty days, as he had a right to do,) simply took the bond of McCutchen and his sureties for the forthcoming of the negro on the termination of the suit. It was such a bond as the sheriff had ample authority to take under the following provision of the section above referred to: "The sheriff or other officer, while he retains the custody of the sequestered property, shall take care of and manage the same in a prudent manner. He may confide the same to the custody of other persons, but he shall be responsible for their acts, and shall be responsible to the injured party for any neglect or mismanagement by himself or those to whom he has confided the custody or management of such property." (Paschal's Dig., art. 5101.)

The property in controversy was a negro woman, and was seized under the writ of sequestration. The defendant in the action did not replevy her. The sheriff left her in the hands of McCutchen, taking his bond, payable not to himself but to the plaintiff, Pait.

The bond of McCutchen and his sureties was, without any good reason therefor, filed among the papers of the cause. McCutchen was not a party to the action, and not being a replevin bond it could form no part of the record

of the case.    It was a mere common-law bond, upon which a suit might have been maintained against McCutchen and his sureties upon a breach of the conditions of the bond. The breach of the bond did not occur until after the judgment was recovered by Pait and the failure of Benson, the defendant in the action, to surrender the property to the sheriff or pay the amount of her value, according to the stipulations of the bond.

This is not a suit, however, upon the bond, but the plaintiff in the same judgment rendered against Benson also took judgment against McCutchen and his sureties as though it were a replevin bond.

The filing of the bond among the papers of the cause did not make him a party, and he had no notice even that it was so filed, and no notice of the rendition of the judgment against him on the bond until after the lapse of the period allowed by law in which to prosecute a writ of error to this court.    His only remedy, therefore, was by injunction to stay a judgment and execution absolutely void, and it was the proper remedy.

The position is not well taken by counsel that the judgment in the court below not having been brought up to this court on appeal or by error within the time prescribed by law, they have by their own *laches* lost their legal remedy, if any they had, and that, therefore, a court of equity will not relieve them.    It is true that he who neglects to use a legal remedy at a time when it would avail him cannot invoke the equity power of the court.    And it is equally true that a judgment legal on its face cannot be attacked collaterally.    But it is also a rule of law, so well settled that a reference to authorities is deemed unnecessary, that a judgment *void* on its face can be attacked as well collaterally as in a direct proceeding, and such was the judgment in question which has been enjoined in this suit.

We are cited to the case of Jones *v.* Hays, 27 Tex., 1,

as authority for treating the bond of McCutchen and his sureties as a replevin bond. That case holds the very reverse as the rule in question. In that case, as in this, the bond was taken by the sheriff of a third party, but made payable, as in this case, to the plaintiff in the action. In that case, as in this, judgment was taken upon the bond without service or notice on the makers of it, as on a replevin bond. The only distinction between that case and this consists in the fact that that case was brought to this court on error and the execution superseded, whereupon suit was instituted upon the bond as a common-law bond, and it was held by this court to be such, and as such a recovery was had upon it.

It appearing, therefore, that the judgment rendered against McCutchen and his sureties was an absolute nullity, that the appellees had no notice of the rendition of it until after the time had expired in which they could avail themselves of a writ of error, the writ of injunction in this case was properly sued out, and the judgment of the court below perpetuating the same was properly rendered.

The former opinion in this case is overruled, the former judgment of this court is set aside, and that of the court below affirmed.

## ON A SECOND REHEARING.

*Sayles & Bassett*, for appellant, contended—

1. That the bond was in conformity with the statute, being executed by the person from whose possession the property was taken. (Paschal's Dig., art. 5097.)

2. That if there was any informality in the bond it was one of form and not of substance, available only in the court below, and that the judgment against the securities upon the bond cannot be questioned in a collateral proceeding, citing Fitzhugh *v.* Orton, 12 Tex., 4; Rotzein *v.* Cox, 22 Tex., 62; Bohanon *v.* Hans, 26 Tex., 445; With-

ers *v.* Patterson, 27 Tex., 491; Watson *v.* Hopkins, 27 Tex., 637; McNeill *v.* Hallmark, 28 Tex., 157.

3. That the surety, McCutchen, by the execution of the bond, became a party to the proceedings; that he might have appealed from the judgment, and was estopped thereby. (Cheatham *v.* Riddle, 8 Tex., 162; Sartain *v.* Hamilton, 14 Tex., 349.)

4. That if the replevy was not executed so as to authorize a statutory judgment, it is valid as a simple obligation, upon which the appellees were entitled to judgment upon the agreed case, citing Jones *v.* Hays, 27 Tex., 1; Oldham *v.* Erhart, 18 Tex., 147; Cyrus *v.* Hicks, 20 Tex., 483; Clegg *v.* Varnell, 18 Tex., 305; North *v.* Swing, 24 Tex., 193; Wilkinson *v.* Wilkinson, 20 Tex., 237.

The proposition that the emancipation of the slave excuses not only her delivery but excuses also the payment of her value, which was the alternative condition of the judgment, we answer that the duty of paying her value was created by the contract of the appellee, and that he did not accept the casualty of her loss by her natural death or destruction of property. (Platt on Cor., 582; Suydam *v.* Jenkins, 3 Sandf., N. Y., 643; Boyden *v.* United States, 13 Wall., 17.)

A covenant to repair a building is not discharged by its total destruction by inevitable accident. (Bullock *v.* Dommitt, 6 Term. R., 650; Digby *v.* Atkinson, 4 Camp., 275; Phillips *v.* Stevens, 16 Mass., 238; Fowler *v.* Bott, 6 Mass., 63; Weigall *v.* Waters, 6 Term. R., 488; Loader *v.* Kemp, 2 C. & Payne, 375; Clancy *v.* Overman, 1 Dev. & Bat. N. C. L., 402.)

The rights of the parties were fixed by the judgment, which was in the alternative. One of the conditions is still possible, and performance of that condition is the only discharge which can be pleaded. (Suydam *v.* Jenkins, 3 Sandf. N. Y., 643; Boyden *v.* United States, 13 Wall., 17; Clancy *v.* Overman, 1 Dev. & Bat. Law R., 402.)

Where a party undertakes to do one of two things, one of which is or becomes unlawful or impossible, and the other remains lawful and capable of being performed, the obligor will be held to the performance of that which may still be performed.

"But if one gives a good and valid consideration, and thereupon another promises to do two things, one legal and the other illegal, he shall be held to do that which is legal, unless the two are so mingled and bound together that they cannot be separated, in which case the whole promise is void.

"Thus, in the Bishop of Chester *v.* John Freeland, Ley, 79, Hutton, J., lays down the rule that when a good thing and a void thing are put together in the same grant, the common law makes such construction that the grant shall be good for that which is good and void for that which is void. This principle is also distinctly recognized in Kerrison *v.* Cole, 8 East., 236; see also Norton *v.* Simmes, Hob., 14. And in the late case of Leavitt *v.* Palmer, 3 Comst., 37, Bronson, J., said: 'It is undoubtedly true that where a deed or other contract contains distinct undertakings, some of which are legal and some illegal, the former will be in certain cases upheld, though the latter are void; and the principle is fully recognized in a late case before the Privy Council. (Bank of Australasia *v.* Bank of Australia, 12 Jur., 189; Bank of Australia *v.* Breillat, 6 E. F. Moore, 152; see also Chase's Ex'r *v.* Burkholder, 18 Penn., 50.' ")—(1 Pars. on Cont., 381, 382.)

In the case at bar the obligation incurred by the appellee, by the execution of the replevy bond, was that he would have the slave forthcoming to abide the decision of the court or pay her value in case the suit should go against him. The suit was decided against him, and the judgment (a contract of the highest character known to the law) was for the negro Mary; and in case she could not be had, then that the plaintiff recover of the defendant,

Benson, and the appellee and the other surety her value, &c.

The appellee was thus bound by the judgment to the same extent as his principal, Benson. Whatever will ex- cuse the one from the enforcement of the judgment will excuse the other. The surety on the replevy bond, against whom the judgment is rendered, cannot occupy a better position than a surety on an appeal bond, who, with the principal, is bound to perform the judgment, sentence, or decree of the court. But could the sureties of Benson on the appeal bond, or the sureties of White, in White *r.* Bartlett, 34 Tex., 399, be held to say that since the judg- ment of 1860, when they entered into bond, it has become impossible, by the act of the Government, to perform one part of the judgment, and that they are therefore released from the alternative condition of their undertaking? Yet this is precisely the argument of the appellee, with the difference in the facts that his liability was fixed by the judgment rendered at the time when both conditions were lawful.

Greenleaf states the proposition to be, where the per- formance of a duty is rendered impossible by the act of God, if the duty was created by the law alone he is ex- cused, but if the duty was created by his own contract, he is still answerable for the non-performance. (2 Greenl. Ev., § 236, and note.)

Assuming this to be a correct statement of the doctrine, the appellee, who voluntarily contracted by his replevy bond to deliver the slave or pay her value, comes within it. The obligation being one imposed by his own contract, he is not excused from its performance by reason of one of the alternative conditions having become unlawful or impossible.

*Shepard, Searcy & Shepard,* for appellee.

DEVINE, ASSOCIATE JUSTICE.—This cause is presented on

a rehearing granted by our predecessors. It is not usual to state at length the reasons for a judgment rendered when it is the affirmance of a previous one. This being the second rehearing granted and the third opinion delivered in this case, the labor and ability displayed by counsel for appellants and appellee in their efforts to reverse or sustain the judgment of the district judge makes it proper that a statement of the case, as presented by the record and briefs, should be made, and the reasons for the judgment rendered be given.

The judgment of the District Court (on appeal) was reversed, and the cause dismissed on the 17th of March, 1873. A rehearing being granted, the judgment of reversal and dismissal was set aside, and a judgment rendered on the 21st of October, 1873, affirming the judgment of the District Court of Washington county. A rehearing was granted in November, 1873, and the question is for the third time presented in this court, "Did the court err in overruling appellants' demurrer and in rendering judgment for appellee?

On the 5th day of August, 1870, appellee McCutchen obtained from the judge of the 28th judicial district an injunction restraining appellants from seizing or selling any of his property by virtue of an execution issued on a judgment obtained against himself and others on an alleged replevin bond, executed on the 8th of April, 1857, for the forthcoming of a slave named "Mary," to abide the judgment of the court in a suit (for the recovery of certain slaves) then pending in Burleson county, wherein Stephen Pait was plaintiff and S. M. J. Benson defendant. Appellee alleged various grounds for the equitable relief sought by his petition: 1st. That he did not execute a replevy bond; 2d. That he was not a party to the suit; 3d. That he had no notice, and the judgment was, therefore, void as to him, and that, even if liable at the time judgment was rendered in favor of Pait against Benson, as defendant and

petitioner, and others on the bond for the value of the slave "Mary," "if she could not be had," that before said judgment was determined in this court the result of the war, the Constitution and laws of Texas, and the Constitution and laws of the United States, had emancipated all slaves, and made it (without fault of his) impossible for him to return to appellants as property the woman "Mary;" that she was still residing in Burleson county, and he is ready and willing, and always has been, to deliver up said "Mary" according to the terms of the bond, if permitted by law so to do.

The appellants excepted to the sufficiency of the bill, and prayed a dissolution of the jurisdiction and a dismissal of the bill. The parties agreed on a case stated, and authorized the court to determine the questions at issue without the intervention of a jury. The judge decided in favor of appellee, and perpetuated the injunction, restraining all action, so far as it affected McCutchen, on the judgment rendered in favor of Pait by the District Court of Burleson county in May, 1860, and affirmed by this court April 30, 1870. From the judgment of the District Court defendants appealed, and assign as errors the overruling of their demurrer and the rendering judgment in favor of plaintiff McCutchen.

The grounds relied on for an affirmance of the judgment are embraced in the following questions: Was not the judgment in favor of Stephen Pait *v.* Benson, McCutchen and others, void as regards McCutchen, the bond signed by him not being a replevy bond, and he not being a party in any sense to that suit? If the bond, however, was a replevy bond, and the judgment against him valid, is he not excused or relieved from his obligation as one of the signers of the bond to have the slave Mary "forthcoming to abide the decision of the court by reason of the destruction of slavery and consequent freedom of Mary before the decision of the case in this court?"

Appellants contend that the bond was a valid replevy bond, and as such judgment was properly entered against appellee as one of the makers, and being a wrong-doer, he is not released from his assumed responsibility by reason of the emancipation of the woman Mary.

We are unable to agree with the opinion of the court delivered by Justice McAdoo, that this bond is not in substance a replevin bond, and that it is a bond taken according to the requirements of section 7 of the sequestration act. (Paschal's Dig., art. 5101.) That it is not, and was not intended to be, a bond executed under section 7, article 5101, is evident from the facts at the date of its execution and a comparison of section 7 with the bond. Upon the commencement of the suit of Pait v. Benson, the slaves were seized by the sheriff by virtue of the writ of sequestration sued out by Pait. The seizure was on the 31st of March, 1857; the bond was executed eight days after, on the 8th of April, 1857. Under the law defendant Benson had thirty days from the date of seizure in which to give a replevin bond. On his failure to give the bond, the plaintiff, on the expiration of the thirty days, had ten days in which he could give bond and take possession of the property. From this it is evident that forty days must elapse from the seizure before the sheriff could act so as to deprive the plaintiff of his right to take the property, and thirty before the defendant could be deprived of the same right. The bond in question was executed on the eighth day, and if taken under article 5101, it would not have been made payable to the sheriff. The sheriff was the responsible party, and to him the litigant entitled to the property after judgment is authorized to look for the forthcoming of the property. That the bond in question was accepted by one party and by the other intended to be given under the 6th section of the act, (Paschal's Dig., art. 5100,) is readily perceived from an examination of the instrument. The bond, it is true, commences with the declaration, "that

we, William McCutchen, as principal, and Abraham Binkley, as surety," are held and firmly bound unto Stephen Pait, and then continues, following the stipulations and conditions as set forth in article 5100, and closes with the allegation in the words of the statute as it stood in 1857, that he "shall have her forthcoming to abide the decision of the court, or will pay the value thereof in case the suit is decided against him." The frame of the bond, with the exception of the first paragraph, shows it to have been intended to be given as the bond of defendant Benson under article 5100. It was given within the time prescribed by that article, it is in the language of that article, it is so treated by the sheriff, returned into court by that officer, filed among the papers of the suit of "Pait *v.* Benson," judgment is taken against the parties to it, no objections were made in the District Court, and no question raised on, this point on the appeal to this court. This court acted on this question in entering a remittitur of one hundred dollars of the sum found by the jury as the value of the slave "Mary."

It is, however, contended by appellee that the name of the original defendant, S. M. J. Benson, does not appear as signed to this bond; that the names signed are S. H. Benson, William McCutchen, and A. Binkley, and lacking the signature of defendant in that suit, it cannot be classed as a replevy bond, and that the name of "S. H. Benson," as it appears to the copy in the transcript, was a mistake, and that it was S. M. Benson, a son of the defendant, who signed it. The judgment of the court recites that defendant (S. M. J. Benson) was the principal and William McCutchen and A. Binkley the sureties on his replevin bond. The clerk certifies that the copy in the transcript is a true copy of the replevy bond given by "S. M. J. Benson, William McCutchen, and A. Binkley." These evidences would tend, without other proof, to the conviction that it was signed by the defendant, and that

the omission of the letter J and the mistake of H instead of M was an oversight of the clerk. We are not, however, left in doubt on this question. An examination of the facts agreed on in this case show that appellee admits that this bond was executed by S. M. J. Benson. We are of opinion that the bond, although irregular, and in some respects defective, was nevertheless sufficient to give the court jurisdiction, and the error, whatever it may have been, cannot affect the validity of the judgment in that proceeding.

The validity of the judgment rendered in 1860 against appellee being declared, we are led to the next inquiry: Is appellee liable, by reason of that judgment, to pay the value of the slave Mary, as found by the jury,.he being unable to have her forthcoming on the affirmance of the judgment against Benson, April 30, 1870?

It is. contended that when judgment was rendered in May, 1860, appellee could have relieved himself from all liability by returning the property to the successful claimant, Pait; that he failed and refused to do so; that he delayed the final disposition of the cause in this court; that he cannot be considered in any other light than a wrongdoer, and cannot now, having retained the property until the result of the war had rendered it worthless, take advantage of his own wrong; that the affirmance of the judgment in suit of Pait v. Benson by this court, in April, 1870, was not a new judgment in that cause, but that it merely related back to and declared valid the judgment of the District Court of Burleson county, rendered in May, 1860; and property in slaves being recognized by the law at that time, appellee is liable for the value of Mary, with interest from date of judgment.

We are satisfied that it was not in his power to return the woman at the time judgment was rendered against Benson, appellee, and Binkley. His surrender to Benson, from whom he received her, would not relieve him from his liability on the bond to Pait. His surrender of her to

Pait would not relieve him from his responsibility to Benson, from whom he received her, and who was then prosecuting his appeal to this court. He could not interfere with Benson's appeal; he cannot be considered in any sense in the character of a wrong-doer. Appellee was in possession of the slave before suit was instituted by Pait for her recovery. Benson, from whom he hired Mary, appeared to be the owner. He had from Pait a bill of sale absolute on its face for all the negroes in controversy. Benson's appeal was neither useless nor frivolous. The judgment rendered against himself and sureties in the District Court was reversed, and on a remittitur for $850 being entered by Pait's attorneys, the judgment was reformed. The appellee acted, after the judgment was rendered in 1860, as most prudent persons would have done, retained possession of the property and awaited the course of events. .

In the conflict of opinion relative to the liability of a party for property destroyed or rendered valueless by uncontrollable force or such agency as no care or prudence could foresee or avert, it is found that several of these decisions were based more upon the form of plaintiff's action than upon the justice and reason of the particular case. That pleading exercised as great an influence on the question decided, perhaps more than the essential facts of the cases.

An examination of the question of liability on a replevin bond for the adjudged value of the property replevied, when the same cannot be forthcoming by reason of the act of God or, as in the present case, by a series of events which no effort of appellee could in any possibility prevent, has led to the belief that the following extract from the opinion of Chief Justice Hemphill, in the case of Porter *v.* Miller, 7 Tex., 479, embraces the rule to be followed in questions of this character: " If the possession of the defendant be wrongful in the popular acceptation of the term; if it be inequitable and unconscientious, acquired, for in-

stance, in violation of a trust or by force, violence, or fraud, he should, *in all events*, be responsible for the value of the property. But if he held by title acquired in good faith; if his claim be not destitute of equity, or have probable foundation in law; if it be conscientious, he cannot be treated as a willful wrong-doer, not relievable even as against the act of Divine Providence. In short, his responsibilities must depend upon the peculiar circumstances of the particular case." Testing appellee's liability by this standard, we do not find his possession to have been "wrongful in the popular acceptation of the term;" he cannot be, in any light in which he may be viewed, justly classed as "an intermeddler." The defendant, Benson, from whom the slave was hired, had a title regular on its face and valid in law. The equities on which Pait recovered against Benson were not, so far as is shown by the record, known to appellee. The bond signed by Benson, McCutchen, and Binkley, it is admitted, had been fully complied with, in all its conditions or stipulations, up to the time of the judgment in this court in April, 1870. Nearly five years before that judgment was rendered the consequences of the late war between the States had emancipated the woman Mary, in common with all other slaves in Texas. The appellee, then, being at the time of the final judgment prevented by the Constitution and laws of the United States and Texas from delivering up the property, by reason of its having ceased to be property, and this without any fault on the part of those who executed the bond or of any person connected with them, we are of the opinion that he is relieved from all liability on the replevy bond, and that there was no error in the judgment of the District Court, and it is affirmed.

AFFIRMED.