# SUPREME COURT OF TEXAS.

## TYLER TERM, 1864.

---

### M. WATSON, ADMINISTRATOR, v. R. M. HOPKINS.

A power of attorney which has been improperly admitted to record upon insufficient proof, is not admissible in evidence without proof of its execution.

It was not error to exclude as evidence a power of attorney, the contents of which could have had no significance in the cause.

When a judgment of a court of general jurisdiction is offered as evidence in a collateral suit, and is pertinent to the issue in such collateral suit, the judgment, however erroneous, is admissible, and is conclusive upon the point to which it speaks, unless it is made affirmatively to appear that the court which rendered it had no jurisdiction over the parties or over the subject matter.

The fact that an appeal is pending in the Supreme Court does not incapacitate the parties thereto from dealing with the subject matter of the litigation in any manner which would be lawful if such appeal were not pending, whether they so deal by an act in *pais*, as by a release or a conveyance, or in the more solemn form of a judgment by consent in the court from which the appeal was taken.

The judgment offered in evidence purported to have been rendered upon consent of an attorney in fact of the plaintiff; but the authority of the attorney in fact was not shown, either by the record or otherwise: *Held*, that though this would be a fatal objection to the judgment if it was under review in an appellate court, it furnishes no ground to attack a domestic judgment when collaterally brought in question.

The payment of the taxes is an essential ingredient of a title to land acquired by virtue of the statute of limitations of five years; but the law prescribes no more stringent rule respecting the proof of the payment of the taxes than for the establishment of the other facts in the case. The payment may be shown either by direct or circumstantial evidence of a legitimate character.

There being evidence tending to prove that the party resisting the title as-
serted under the statute of limitations had himself, as a tenant of his op-
ponent, been in possession of the land under that title for more than five
years, and that he was bound to pay the taxes during that time;—these
facts should have been left to the jury with liberty to draw such conclu-
sions, with regard to the payment of the taxes, as all the circumstances
warranted. *Quære*, whether such party was not estopped from question-
ing the payment of the taxes?

APPEAL from Red River.    Tried below before the Hon. W. S.
Todd.

On the 21st of November, 1854, Hopkins, the appellee, filed
his petition in the District Court of Red River county, alleging
that he was the owner of an undivided one-half of a third of a
league of land, located and surveyed by virtue of the headright
certificate of Abner H. McKenzie, and that the unknown heirs of
Robert Hamilton, deceased, and the unknown heirs of William F.
Hamilton, deceased, were the reputed owners of the other undi-
vided half of the survey.   He prayed for citation of said heirs,
for partition and general relief.

On the 8th of May, 1855, Matthew Watson brought suit in
same court against Hopkins, the appellee, upon his written obli-
gation for rent of a plantation upon the same tract, which obliga-
tion purported to be payable to Watson as the administrator of
Robert Hamilton, deceased.

At the June Term, 1855, the two cases were consolidated, on
the motion of Hopkins, and the consolidated case proceeded as
though Hopkins were plaintiff, and Watson, as administrator, de-
fendant.

The pleadings were numerous and involved; but they need not
be specially described.   The defendant, Watson, set up title and
pleaded the limitation of five years, as well as other defences.

After two verdicts in favor of the defendant for the land and
for rents, which were set aside on motions for new trials, the case
came to trial for the third time at the July Term, 1860.

The defendant offered in evidence a power of attorney, which
purported to have been executed by Abner H. McKenzie to J. W.
P. McKenzie on the 21st day of December, 1844, and which, on
the 6th of February, 1847, was admitted to record on an affidavit

reciting that the affiant "is well acquainted with the handwriting of Jesse Benton, junior, one of the subscribing witnesses to the annexed and foregoing power of attorney from Abner H. McKenzie to John W. P. McKenzie, and that to the best of his knowledge and belief Jesse Benton, junior, wrote the annexed and foregoing power of attorney, and signed his name as a witness thereto." This power of attorney simply authorized the agent to conduct or control the business and affairs of A. H. McKenzie during his necessary absence from the Republic. No proof of its execution, other than such as was imported by its registration, was offered by the defendant. Upon a general objection of the plaintiff, it was excluded from the jury, and the defendant excepted.

The defendant, in support of his title, also offered in evidence a decree of the District Court of Red River county, rendered at its Fall Term, 1846, in the case of A. H. McKenzie v. Robert Hamilton. This decree recited a certain other decree rendered at the Spring Term, 1843, in the same cause, which other decree cancelled and annulled an agreement between the parties, and vested the title of Hamilton in said A. H. McKenzie. In the decree of 1846 it is stated that an appeal had been taken from the previous decree and was still pending in the Supreme Court; and the entry then proceeds as follows: "Now at this term come the parties into court, Abner H. McKenzie, by his attorney in fact, John W. P. McKenzie, and William F. Hamilton, executor of Robert Hamilton, deceased, and consent that the decree aforesaid shall be set aside, and the land aforesaid, and all right, title and interest in and to the same be vested in W. F. Hamilton, executor of R. Hamilton, deceased, to be administered as the property of the said succession is directed to be administered. Wherefore it is adjudged, ordered and decreed by the court that the consent of said parties in this behalf be made the decree of this court, and be entered upon the records as such." Upon the general objection of the plaintiff, the decree was excluded, and the defendant excepted.

The defendant introduced evidence that William F. Hamilton and the plaintiff, as tenants of Robert Hamilton, defendant's tes-

tator, conducted a plantation in partnership on the land in contro-versy from the year 1848 to 1854, inclusive, and that Hopkins, the plaintiff, managed the plantation, and was bound to pay the taxes on the land during those years.

The plaintiff derived his title by mesne conveyance from A. H. McKenzie, under whose certificate the land was located. There are other facts in the case essential to a full history of it; but they have no pertinency to the opinion.

The court below, with reference to the defendant's plea of the five years limitation, instructed the jury that "no title can be de-rived under the statute of limitations as here pleaded unless the defendant and his vendors were in possession of the land for five years prior to the institution of this suit, using, cultivating and enjoying the same, and actually paid taxes on the land for the whole time. So if you believe from the evidence that he failed to perform any one of these necessary requisites under this plea, you will find for the plaintiff." "Also, if the jury believe that Hopkins, acting as the agent of the Hamiltons' estate, did pay the taxes, it would be such a payment as the statute required; but there must be an actual payment, and not a mere acknowledgment of an obligation to pay; for, as this is a summary way of acquir-ing a title to land, the requirements of the statute must be strictly complied with, otherwise no title is acquired."

The jury found in favor of the plaintiff for one-half of the land as claimed by him, and in favor of the defendant for the sum of $3225, six years rent of the half belonging to Hamilton's estate. Judgment in accordance with the verdict. The defendant moved for a new trial, which was refused.

Having appealed, he assigns as errors the exclusion of the power of attorney from A. H. to J. W. P. McKenzie, the exclu-sion of the decree of the court in the case of McKenzie v. Ham-ilton, the charge of the court to the jury, &c.

*J. A. N. Murray*, for the appellant.

*Amos Morrill*, for the appellee.

MOORE, J.—The power of attorney from A. H. McKenzie to John W. P. McKenzie was properly excluded by the court from the jury. There was not even an offer to prove its execution when offered in evidence, nor was it admissible as a duly recorded instrument, because the proof upon which it was admitted to record, did not conform to the statute. Nor was the contents of the power of attorney pertinent to any issue in this case. It did not authorize the sale by the attorney of the land of his principal, or otherwise sanction his divesting him of title to it; it could therefore have had no significance in this case, and should for this reason, also, have been withheld from the jury.

We are of the opinion, however, that the ruling of the court excluding the judgment of the District Court of Red River county, in the case of McKenzie v. Hamilton, was improper. It was the decree of a court of general jurisdiction, fully authorized to take cognizance of and adjudicate upon such matters as are disposed of by the judgment in question. As the present suit is a collateral proceeding to that in which said judgment was rendered, it is not necessary for us to inquire, whether it was a correct and proper judgment to have been given in that case; unless it is made affirmatively to appear that the court had no jurisdiction over the parties or its subject matter, it must be held conclusive upon the point to which it speaks.

We suppose it was excluded from the jury upon the ground that the appeal which had been previously taken to the Supreme Court, had withdrawn the subject matter from the jurisdiction of the District Court. If it were admitted that the District Court improperly permitted the parties to enter the judgment after the appeal had been taken from the first judgment, we do not see that its action can be said to be an absolute nullity. The court may have acted in an improper case, or at an improper time; but still the subject matter of its judgment was within its jurisdiction. It is believed, however, not to be an unusual practice to amend or correct the record of proceedings had in the District Court pending an appeal upon them to this court. There is no peculiar sanctity in the judgment of a court, or a matter pending here on appeal, beyond what attaches to any other vested right, which prevents parties

41*

from dealing with it as may comport with their interest. Certainly the parties by an act in *pais*, might have released or conveyed any interest adjudged in their favor, whether an appeal was pending or not. Why then could they not do the same thing upon consent, in the more solemn form of a judgment of the court in which the original decree was rendered? We may also add, however, that there was nothing before the court to show that the appeal which had been taken from the first judgment, had been prosecuted or was still pending, when the action of the court was subsequently invoked by the consent of the parties.

The only other objection which seems apparent to the judgment, is, that the plaintiff A. H. McKenzie, purports to have appeared and consented to it by an attorney in fact, and not in person; and that the authority of the attorney to appear and bind him by the judgment, is not shown by the record or otherwise. This would unquestionably be a fatal objection to the judgment, if the case was under review in an appellate tribunal; but furnishes no ground to attack a domestic judgment when brought collaterally in question. In such cases, it has been often held, that the judgment cannot be attacked by a direct traverse of the truth of the record, alleging the appearance of the party against whom it is rendered, and that it is equally inadmissible to do so by denying the authority of the attorney who purports to have made an appearance for him. (Holbert v. Montgomery's ex'rs, 5 Dana, 11; St. Alban's v. Bush, 4 Verm., 58; Field v. Gibbs, 1 Pet., C. C. R., 155; Tichout v. Cilley, 4 Verm., 415; Pillsbury v. Dugan, 9 Ohio, 117.)

The instruction of the court in respect to the payment of taxes, for the purpose of sustaining appellant's claim of title by limitation, was, we think, more stringent than required by law. The payment of the taxes is an essential ingredient in a title of this kind. But the law prescribes no stringent rule requiring its proof by more certain or conclusive evidence than is necessary for the establishing of the other facts in the case. It may be shown by either direct or circumstantial testimony of a legitimate character. There was testimony in the case tending to prove that the appellee had been in possession of the land under appellant's title

for more than five years, and that he was bound to pay the taxes during that time. Would it be unreasonable for the jury to infer that he had complied with his stipulations, and had done what he had undertaken to do? Does it rest with him to say that the other party has not proved that he has complied with his contract? It might perhaps be said that he was estopped from asserting the contrary, but whether this is so or not, we are of the opinion the evidence before them should have been left to the jury with liberty to draw such conclusions as to the fact as all the circumstances of the case might justly warrant.

The judgment is reversed and the cause remanded.

Reversed and remanded.