## A. L. SHARPE ET AL. v. C. E. KELLOGG.

### Decided February 3, 1909.

**1.—Limitation—Five Years' Statute—Payment of Taxes.**

One claiming title under the statute of limitation of five years must show the payment of taxes by himself or his vendor in possession for each of the years embraced in the period.

**2.—Same.**

Where, in trespass to try title, the plaintiff claimed under the five years statute of limitation, evidence that his vendor, who was in possession, intending to render the land in controversy for taxes for a particular year embraced in the period, through carelessness, rendered different tracts, and, intending to pay the taxes for that year on the land in controversy, paid the taxes on the land that was assessed in accordance with his rendition, did not show compliance with the statute, and he could not recover as against one holding the superior record title.

**3.—Payment of Taxes—Evidence.**

Payment of taxes is an act in pais, which may be proved not only by the record but by the original receipt or by any other evidence which satisfies the jury of the fact.

**4.—Same—Assessment for Taxes.**

Where the assessment wholly fails to lead to the identification so that neither the owner nor the officer can tell that his land is taxed, the duty of payment cannot be performed, and the assessment is void; and it follows that payment could not be made by the owner under an assessment shown by the records of the assessor's office, by the description in the tax rolls, to have been upon entirely different tracts of land from those claimed by him.

Appeal from the District Court of El Paso County. Tried below before Hon. J. M. Goggin.

*A. G. Wilcox* and *M. W. Stanton,* for appellants.

*W. S. Smallwood* and *McGown & Price,* for appellee.—The evidence was ample to sustain the finding of the court that the taxes on the property for the year 1891 were paid. The payment or nonpayment of taxes is proved like any other fact, by direct or circumstantial evidence. Allen v. Woodson, 60 Texas, 652; Watson v. Hopkins, 27 Texas, 642; Ochoa v. Miller, 59 Texas, 462.

NEILL, ASSOCIATE JUSTICE.—This is an action of trespass to try title brought on May 1, 1908, by Courtland E. Kellogg against A. L. Sharpe and J. J. Schairer to recover possession and title to a certain parcel of land situated in the town of Clint, El Paso County, Texas, known as lot No. 3 in block B, and more particularly described as follows: Beginning at N. W. corner of lot No. 2 in block B; thence N. 60 feet; thence E. 140 feet to street; thence S. with street to N. E. corner of lot No. 2, block B; thence west with north boundary line of lot 2, in block B, 140 feet to place of beginning. In addition to the ordinary allegations in actions of this character the plaintiff pleaded title under and by virtue of the several statutes of limitation relating to land.

The answer of defendants contains a special exception to that part of plaintiff's first amended original petition which sets up title under the several statutes of limitation, upon the grounds that it sets up a new cause of action different from that declared on in his original petition; and that his pleadings setting up title under the statutes of limitation are not in due order. Their answer also contains a plea of not guilty and a specific averment of their title to the premises.

The case was tried without a jury and judgment was rendered in favor of the plaintiff, the trial judge filing his findings of fact and of law upon which the judgment is based.

The trial judge's findings of fact are: (1) That plaintiff and defendants have shown a regular chain of title to the land sued for down from a common source to themselves, and that the common source was Thomas M. Collins and wife; (2) that the chain of title under which defendants claim begins with a deed of conveyance from Thomas M. Collins and wife, common source, to Zeno B. Clardy, dated January 9, 1886, and filed for record in January, 1886, while the chain of record title under which plaintiff claims begins with a deed of conveyance from Thomas M. Collins and wife to M. Lowenstein, dated June 30, 1886, and thereafter recorded; (3) that the record title from

Collins and wife down to the defendants through Clardy was a superior title; (4) that in July, 1886, Lowenstein took possession of lot 2, which lies adjoining to lot 1, and purchased lot 3 and took possession of lot 3 and constructed improvements on both of the lots by building a house on lot 2 and a yard fence around a portion of lot 3, and cultivated and used a portion of lot 3 in connection with the house and premises on lot 2; (5) the court then finds that there was occupancy and payment of taxes for five years, beginning with 1887, and the court then finds that lot 3 was afterwards occupied from time to time after Pedrassa moved out of the premises, but the same was not continuous, and that the fence fell into decay, and in 1896 it had disappeared with the exception of some posts, and all evidence of cultivation had disappeared with the exception of one peach tree.

And his conclusions of law are: (1) That the defendants have the superior record title and are entitled to recover the land in controversy unless a recovery is found by the five or ten years statute of limitation upon which plaintiff relies; (2) that the plaintiff is not entitled to recover under the ten years statute, the evidence failing to establish ten years adverse possession, the possession having been broken after 1892; however, that the plaintiff and Lowenstein, under whom he claims, had and held said property (lot 3) under said conveyance to Lowenstein from Collins and wife, continuously occupying, using and enjoying the same and paying the taxes thereon for a period of more than five years next before the institution of this suit, and that during the said period Lowenstein claimed under said deed, and his possession by his tenants thereunder was open, visible and hostile; (3) that plaintiff is entitled to recover under the statute of limitation of five years, and I so adjudge; (4) that plaintiff is not entitled to recover any damages; there is no proof as to rental value of the premises, the proof showing that the lot is worth from $50 to $100.

Under the first, second, third, fourth and fifth assignments of error it is contended that there was no evidence tending to show that the taxes due on the land in controversy for the year 1891 were paid by Lowenstein, under whom plaintiff claims; but that on the contrary the uncontroverted evidence shows that the taxes, which he claims to have paid on the lot for that year, were not paid on it, but on surveys 2 and 3 in block B, Presidio de San Elizario, containing fifty acres, separate and distinct surveys from the lot in controversy. It will be noticed from the findings of fact and conclusions of law of the trial judge that in order for plaintiff to establish title under the five years statute of limitation (the burden of which was upon him), it was essential for him to prove that Lowenstein paid the taxes due on the lot for the year 1891. If he failed in this proof, his right of recovery was defeated by defendants' superior title. The payment of the taxes on lots Nos. 2 and 3, block B, in the town of Clint for all of the five years said lots 2 and 3 were in adverse possession, except for the year 1891, by Lowenstein, was shown by tax receipts and by the oral testimony of Lowenstein himself. But for the year 1891 no tax receipt was produced in evidence, and Lowenstein testified, "I don't remember whether I paid taxes on this property, for these lots, for 1891. I was some-

times careless. . . . Sometimes I would be careless in giving my assessment. . . . Sometimes I gave him (the assessor) my assessments, sometimes my wife gave him the assessment. I furnished the money to pay them in 1891." It is undisputed that a paper in the assessor's office, purporting to show the rendition made by Lowenstein for the year 1891, shows upon its face that he rendered surveys 2 and 3 in block B, Presidio de San Elizario, 50 acres, valued at $300; but the witness Lowenstein testified in this connection that he had not rendered the property as fifty acres, and that the figures "50" in the acreage column were not written by him. The following portion of the tax rolls of El Paso County was introduced in evidence by plaintiff: "Isaac Lowenstein, survey 2 and 3, block B, Presidio de San Elizario, 50 acres; value $300, El Paso County. State and county taxes paid December 23, 1891, for the year 1891." These rolls show that the rendition was made in the name of Isaac Lowenstein by Moritz Lowenstein. They do not specify lots in Clint, but San Elizario District. The witness, M. Lowenstein, being recalled, testified: "In 1891 I did not own any other property in the town of Clint other than lots 2 and 3 in block B. . . . I don't know of owning any 25-acre tracts in San Elizario in 1891. . . . I never owned any 25-acre tracts in the town of Clint or anywhere in that district. I never had any 25-acre survey in trust for my boy Isaac in the year 1891."

While payment of taxes is an act in pais, which may be proved not only by the record but by the original receipt or by any other evidence which satisfies the jury of the fact (Dun v. Wills, 21 Texas, 642; Watson v. Hopkins, 27 Texas, 642; Ochoa v. Miller, 59 Texas, 460; Allen v. Woodson, 60 Texas, 652; Cooley on Taxation (3d ed.), 807), yet the question here is, Did the evidence introduced by plaintiff tend to show that Lowenstein paid the taxes for the year 1891 on the property involved in this suit? It is said in Cooley on Taxation (3d ed., 743): "Assessment is, from its legal requirements and the necessity of preserving its evidence, a written entry, and must depend upon the records in the assessor's office and not on parol testimony or the private duplicates of the assessor. . . . The result of the whole is, that where the assessment wholly fails to lead to the identification, so that neither the owner nor the officer can tell that his land is taxed, the duty of the payment can not be performed, and the assessment is void." If this be so, then, a fortiori it must be held that payment of taxes could not be made by the owner under an assessment shown by the records of the assessor's office, by the description in the tax-rolls, to have been made upon entirely different tracts of land from those claimed by him, which is the case presented here. See also Wigmore on Evidence, section 1640. Lowenstein, according to his own testimony, was sometimes careless in his renditions; it is shown indisputably that he rendered, or described in his rendition, surveys 2 and 3, block B, Presidio de San Elizario, 50 acres, El Paso County, for $300; that the land as described in the rendition was assessed and entered on the tax-rolls for the year 1891, and that he paid the taxes thus assessed for that year. The land in controversy for that year was not assessed at all, and no taxes were or could be legally paid on it for that year.

Suppose the land in controversy had been sold for taxes under that assessment, would any one think for an instant that the sale vested a shadow of title in the purchaser at such sale? Again, suppose that the defendants or those under whom they claim, who were the real owners of the land in controversy at the time, had seen on the records in the assessor's office the description of the lands as it appeared on the rolls, and had learned that the taxes had been paid for the year 1891 in accordance with such assessment, would any one contend that this gave them notice that their land had been assessed and the taxes paid upon it for that year by Lowenstein? No. On the contrary, it would inform them that the assessment and payment of the taxes were upon entirely different tracts of land—that described in the rendition and on tax-rolls.

The best that can be made out of the evidence, in plaintiff's favor, is that his vendor who was in possession, intending to render the lots for taxes for the year 1891, through carelessness, rendered different tracts, and, intending to pay the taxes for that year on the land in controversy, paid the taxes on the land that was assessed in accordance with his rendition. He can not in this manner, under the five years statute of limitation, deprive the defendants of their property, for such deprivation would be without due process of law. It is unnecessary to pursue this subject further nor to consider any other of the assignments. As the trial court found the defendants' title was superior to plaintiff's, unless defeated by the five years statute of limitations, and as there is no evidence tending to show that plaintiff or those under whom he claims paid the taxes on the land in controversy for the year 1891 (which was essential to his proof of title by limitation), the judgment of the District Court is reversed and judgment is here rendered for the appellants.

*Reversed and rendered.*