## J. T. LOFTON v. J. R. MILLER, ET AL.

. Decided April 14, 1909.

**1.—Limitation—Payment of Taxes.**

Where the assessment wholly fails to lead to identification of the property taxed, so that neither the owner nor the officer can tell that his land is taxed, the duty of payment cannot be performed, and the assessment is void; and payment

of taxes can not be made by the claimant under an assessment shown by the records of the assessor's office by the rendition of the claimant which is the basis of the tax rolls, to have been made upon entirely different land from that claimed by him, and thus satisfy the statute of limitation of five years, although his intention is to pay on the land claimed.

### 2.—Same—Case Followed.

Where the defendant, in trespass to try title, asserted title under the five years statute of limitation, and testified that he paid taxes on the land for a certain year to complete the period, but the land in controversy being the northeast half of survey No. 19, located by virtue of scrip No. 636 issued to the East Line & Red River R. R. Co., abstract No. 218, and it appearing from his rendition that he rendered for that year lands as follows: Abstract No. 218; certificate No. 635; survey No. 17 E. L. & R. R. 640 acres, and abstract No. 249; certificate No. 636; survey No. 19 E. L. & R. R. W. ½, 320 acres, and from his tax receipt that he paid taxes in accordance with his rendition, it appeared as matter of law that he had not paid taxes on the land in controversy for such year. Following Sharp v. Kellog, 53 Texas Civ. App., 543.

Appeal from the District Court of Lynn County. Tried below before Hon. L. S. Kinder.

*Wm. J. Berne,* for appellant.

*John R. McGee,* for appellees.—The payment of taxes may be proved by oral testimony regardless of what may appear in the record. The sole and only question is: Was the money actually paid and intended by the owner to be applied on this particular piece of property, and did the tax collector apply it in liquidation of the said taxes as the owner intended? The intention of the owner alone might not be sufficient, but when that intention is coupled with the actual application of the money to the purpose intended, the tax is paid and the demands of the law satisfied. That condition exists in this case. Allen v. Woodson, 60 Texas, 651; Cantagrel v. Von Lupin, 58 Texas, 577; Haskins v. Wallet, 63 Texas, 219, 220; Ochoa v. Miller, 59 Texas, 462, 463.

NEILL, ASSOCIATE JUSTICE.—On November 27, 1907, J. T. Lofton sued J. R., O. L. and J. K. Miller in trespass to try title to recover the N. E. ½ of survey No. 19, block No. 11, located by virtue of land scrip No. 636 issued to the East Line & Red River R. R. Co. The defendants answered by a plea of not guilty and pleaded the five years statute of limitation. The case was tried before a jury who returned a verdict in favor of defendants on their plea of limitation; and this appeal is prosecuted from a judgment rendered in accordance with the verdict.

Under the assignments of error it is contended that the court erred in not peremptorily instructing the jury that defendants did not have title under the five years statute of limitations, because there was no evidence that they or either of them paid taxes on the land for the year 1905, or that they paid taxes thereon for five years prior to the institution of this suit. This requires us to review the evidence upon the issue of limitation. It is uncontroverted that the plaintiff exhibited in evidence such title as entitled him to recover, unless defeated by defendants' plea of limitation. And for this reason the court in-

structed the jury to return a verdict for the plaintiff, unless it should find that his title was defeated by defendants' plea of limitation. The burden of establishing this defense was upon the defendants. In order to discharge this burden it was incumbent upon them to prove that they, or some of them, paid the taxes on the land for the year 1905; for the deed under which they prescribe was not executed until December 23, 1901, nor recorded until January 27, 1902, and, as stated, the suit was filed November 27, 1907.

The abstract number of the survey is 218, its certificate number is 635 and its survey number is 19. The defendants are meant when words "Miller & Sons" are used in the statement of the evidence.

The witness J. R. Miller was asked by defendants' counsel this question: "Since you took possession of it" (meaning the land in controversy) "who has paid taxes on it?" which he answered as follows: "We" (meaning J. K. Miller, O. L. Miller and J. R. Miller) "have paid said taxes, said taxes being for the years 1901, 1902, 1903, 1904, 1905, 1906 and 1907."

On cross-examination he testified: "I did not pay in person the taxes for each of the years 1901 to 1907 inclusive. I did not in person pay the taxes on the land in controversy for the year 1905, my son paid them. All I know about them being paid for the year 1905 is what I know from my son's turning over the receipt for said taxes." The witness here identified the receipt for the taxes of 1905, which is as follows:

"

| | Total value of property assessed: ..........$4,820 |
|---|---|
| **No. 280.** | **Taxes** |
| Lynn County, Texas. | State Ad Valorem........................$ 9.64 |
| | School Ad Valorem...................... 8.68 |
| Received of Miller & Sons the sum of Fifty-six & 88/100 Dollars, in payment of State and County Taxes for the year 1905, on personal property and the following described real estate: | State and School Poll.................... |
| | Penalty................................. |
| | County Ad Valorem..................... 12.05 |
| | County Special......................... 19.28 |
| | County Poll............................ |
| | District School......................... 7.23 |
| | Penalty................................. |
| | .......................................... |
| | Total Tax ........................$56.88 |

| LANDS | | | | | TOWN LOTS |
|---|---|---|---|---|---|
| Abstract No. | Certificate No. | Survey No. | Original Grantee | Acres | |
| | | | | | (Seal of |
| 218 | 635 | 17 | E. L. & R. R. | 640 | Tax Collector.) |
| 249 | 636 | 19 | E. L. & R. R. W ½ | 320 | |
| 327 | 7 | 407 | D. & S. R. | 640 | |

C. H. Doak,

an. 25, 1906. Tax Collector, Lynn County, Texas."

Continuing, the witness said that all he knew about said taxes having been paid for the year 1905 is that his son told him that he had paid it, and had handed him said receipt.

Thereupon, plaintiff asked that said testimony as to the witness's son having told him that he paid the taxes for the year 1905, be struck out because said testimony was hearsay and secondary. The objection was sustained and the testimony struck out.

Another of the defendants, O. L. Miller, testified that he had paid the taxes on the land in controversy for the year 1905 to the tax collector at that time.

The witness being, on cross-examination, shown this paper:

"Inventory of Property.

"Owned by Miller & Sons and rendered for Assessment of Taxes for the year 1905 by O. L. Miller to A. S. Caughran, Assessor of Lynn County, State of Texas.

### REAL ESTATE

| Abstract No. | Certificate or Scrip No. | Survey No. | Original Grantee | No. Acres Rendered | Total Value |
|---|---|---|---|---|---|
| 218 | 635 | 17 | E. L. & R. R. | 640 | 640 |
| 249 | 636 | 19 | E. L. & R. R. W ½ | 320 | 320 |
| 327 | 7 | 407 | D. & S. E. R. | 640 | 640 |

Total Value of Lands............................................. 1600 ''

(We omit the parts of the paper, which follow under the heads of "City or Town Real Estate" and "List of Personal Property," until the affidavit thereon is reached, which is:)

"State of Texas, }
County of Lynn. }
"I, O. L. Miller, do solemnly swear (or affirm) that the above inventory rendered by me contains a full, true and complete list of all taxable property owned or held by me in my own name for Miller & Sons in this county, subject to taxation in this county, and personal property not in this county subject to taxation in this county by the laws of this State, on the first day of January, A. D. 1905, and that I have true answers made to all questions propounded to me touching the same, so help me God.

O. L. Miller.

"Subscribed and sworn to before me, this the 19th day of April, 1905.
A. S. Caughran,
Tax Assessor Lynn County, Texas."

testified that he signed it and that it was inventory of the property of Miller & Sons for the year 1905, and that it was his rendition of the property of Miller & Sons for that year; that part of the inventory had been sworn to by him—that part pertaining to the cattle rendered for taxes. On being shown the affidavit attached to the inventory, he admitted that it contained nothing as to his swearing to only a part of it.

Continuing, he testified that the way he came to render the property was that the assessor came to him, and that he made the rendition for the year 1905, and that it was for him, his father and brother. That when he listed a part of the property for the year 1905 and signed the affidavit attached to the rendition, he was at home, and that when he signed the list or inventory the land now listed on it was not then listed thereon; that the reason it was not was because he thought the assessor could get the description of the land from the records better than he could give it to him, and that he told the assessor to go to the deed records and get the proper description of the land, that is, all the land in the name of Miller and Sons; that he did not tell him to put in the "W. half" on this survey; that the "W. half" of survey 19, block 11, in Lynn County is neither owned nor claimed by J. R. Miller & Sons; that when he came to pay his taxes he found the tax rolls made out. On being handed the receipt above copied, he testified that it was the receipt for the 1905 taxes for Miller & Sons; that the receipt contained, among other items, the following: "Abstract 249, cert. 636, survey, 19, E. L. & R. R. Co., W. ½, acres 320;" that said receipt was the only one for the taxes of Miller & Sons for the year 1905; and that when he went to pay the taxes he called for the amount that was due, paid said amount and got the receipt for it; that at the time he took the receipt, he made no examination of it; that some time afterwards, probably twelve months, he found out about this "W. half" being on the receipt; that he discovered the error about the time this controversy with Lofton arose; that his father took the tax receipt and discovered the error, and, the collector's attention being called to it, he, the collector, suggested its being changed, and did change it, and afterwards the collector changed it back so as to make it read as it did originally.

Caughran, the tax assessor, having identified the rendition sheet hereinbefore copied, testified that the description: "Abstract 249, certificate 636, survey 19, E. L. R. R. Company, original grantee, W. one-half, acres 320," was in his handwriting, and that it was written before the instrument was signed.

The county clerk of Lynn County, having produced and identified the delinquent report of the tax collector made for the year 1905, and approved by the Commissioners' Court, was asked to examine it and see if abstract 249, certificate 636 was mentioned in the report; and, after making the examination, answered that it was not.

We have thus recited practically all the testimony upon the question as to whether the defendants paid the taxes on the land in controversy for the year 1905.

In the case of Sharpe v. Kellogg, 53 Texas Civ. App., 543, in which

substantially the same question was presented it is said: "While payment of taxes is an act in pais, which may be proved not only by the record, but by the original receipt or by any other evidence which satisfies the jury of the fact (Deen v. Wills, 21 Texas, 642; Watson v. Hopkins, 27 Texas, 642; Ochoa v. Miller, 59 Texas, 460; Allen v. Woodson, 60 Texas, 652; 2 Cooley on Taxation, 3d ed., 807), yet the question here is: Did the evidence introduced by plaintiff tend to show that Lowenstein paid the taxes for the year 1891 on the property involved in this suit? It is said in 1 Cooley on Taxation (3d ed.) 743: 'Assessment is, from its legal requirements and the necessity of preserving its evidence, a written entry, and must depend upon the records in the assessor's office and not on parol testimony or the private duplicates of the assessor.    . . .   The result of the whole is that, where the assessment wholly fails to lead to the identification, so that neither the owner nor the officer can tell that his land is taxed, the duty of the payment can not be performed, and the assessment is void.' If this be so, then a *fortiori* it must be held that payment of taxes could not be made by the owner under an assessment shown by the records of the assessor's office, by the description in the tax rolls, to have been made upon entirely different tracts of land from those claimed by him, which is the case presented here. See also, Wigmore on Evidence, section 1640. . . . Suppose the land in controversy had been sold for taxes under that assessment, would any one think for an instant that the sale vested a shadow of title in the purchaser at such sale? Again, suppose that the defendants, or those under whom they claim who were the real owners of the land in controversy at the time, had seen on the records in the assessor's office the description of the lands as it appeared on the rolls, and had learned that the taxes had been paid for the year 1891 in accordance with such assessment, would any one contend that this gave them notice that their land had been assessed and the taxes paid upon it for that year by Lowenstein? No; on the contrary, it would inform them that the assessment and payment of the taxes were upon entirely different tracts of land—that described in the rendition, and on tax rolls. The best that can be made out of the evidence, in plaintiff's favor, is that his vendor who was in possession, intending to render the lots for taxes for the year 1891, through carelessness rendered different tracts, and, intending to pay the taxes for that year on the land in controversy, paid the taxes on the land that was assessed in accordance with his rendition. He can not in this manner, under the five-year statute of limitation, deprive the defendants of their property, for such deprivation would be without due process of law."

That case is hardly distinguished from the one in hand. True it is, that in this case the tax roll was not introduced in evidence, but the rendition sheet was, from which the law contemplates the tax roll shall be made. (Arts. 5096, 5103, 5126, 5127, Rev. Stats. of 1895; Dutton v. Thompson, 85 Texas, 118.)

In the case just cited it is said by Chief Justice Stayton: "The purpose of these laws is manifest, and ought a person who has made a rendition of his property, presumably under oath, to be heard to say that he paid taxes on property in a given year and then claimed it

under a deed duly recorded, when his rendition shows that for tax paying purposes he made no such claim? Ought it not rather be held that he paid taxes on what he listed, though it may have been his intention to pay taxes on some other land? If he had offered his tax receipts, they evidently would have shown that he paid taxes only on the land he rendered for taxation; for the tax roll, which is but a transcript of renditions, is the officer's warrant to collect taxes, and his receipt must, and will if it be true, describe the property on which taxes are paid as the same is described in the tax roll. (Rev. Stats., arts. 4737, 4741.) If, under the renditions made by appellee, the collector of taxes had seized and sold any property of his to enforce the payment of taxes on the land in controversy, the sale would have been void, because the officer would have been without authority on rendition of property as a part of section 180, to sell the property of appellee to satisfy taxes due on a part of section 182. Mere intention to pay taxes on the land in controversy can not make that such a payment which was not so in fact, when tested by his rendition made by appellee." Then, after citing a number of cases in its support, the opinion continues as follows: "Appellee's statement, that he paid the taxes on the land for the years enumerated, in view of his rendition, amounts to no more than an expression of an intention to pay on the land, and this can not override the conceded fact that his rendition did not cover the land in controversy, and the further fact that the tax roll was the collector's warrant for demanding and receiving taxes. That paid must be held to have been paid under the assessment, in the absence of evidence other than such as appears in the record."

When the evidence in this case is viewed in the light of the opinions from which we have quoted, it appears as a matter of law that the defendants never paid taxes on the land in controversy for the year 1905. Therefore the judgment of the District Court is reversed and judgment is here rendered for appellant.

*Reversed and rendered.*

Writ of error refused.